**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Bluefield**

**J.W.,**

      **Plaintiff,**

**v.**                                     **CIVIL ACTION NO.: 1:09-CV-01277**

**HONORABLE DAVID W. KNIGHT, in
his official capacity as Judge of the Circuit
Court of Mercer County for the State
of West Virginia; and
JASON WILSON, a Citizen and Resident of
Mercer County, West Virginia, Real Party in Interest,**

      **Defendants.**

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS ON BEHALF OF DEFENDANT JUDGE KNIGHT**

**I. STATEMENT OF FACTS**

**A.**    **Identification of Parties**

Defendant David W. Knight is the presiding circuit court judge in a criminal case styled: *State of West Virginia v. Jason Wilson*, Felony No. 08-F-143, Circuit Court of Mercer County, West Virginia. Defendant Jason Wilson is a criminal defendant in the aforementioned criminal case. J.W., the plaintiff in the instant case, is the alleged victim in the criminal case.

## B.    Statement of Facts[1]

In February 2008, a grand jury convened in the Circuit Court of Mercer County returned indictments against Jason Wilson and Jeffrey Wilson[2] for crimes of sexual abuse of their sister J.W.  According to the indictment, the assaults began in February 2003 when the family was living in Arizona and continued through May of 2005.  During the time the alleged assaults were occurring, the family moved to West Virginia.  Defendant Jason Wilson was charged with four instances of first degree sexual assault and one count of incest.  According to West Virginia Code § 61-8B-3(b)[3] which establishes the elements for first degree sexual assault, a person found guilty of such an offense may be subject to a prison sentence of not less than 15 nor more than 35 years.  According to West Virginia Code § 61-8-12[4] which establishes the elements for incest, provides that a person found guilty of incest is subject to a prison sentence of not less than five years nor more than 15 years.  Defendant Jason Wilson, therefore, was

---

[1] This summary of the facts is compiled from the complaint filed in the above-referenced case, and a summary of facts in an opinion of the West Virginia Supreme Court of Appeals, *State v. Knight*, 223 W. Va. 785, 679 S.E.2d 617 (2009).  In addition, orders from the underlying criminal proceeding in Mercer County Circuit Court provide information.  According to *Pennington v. Teufel*, 396 F. Supp. 2d 715 (N.D.W.Va. 2005), a court when addressing a motion to dismiss, may consider exhibits, matters of public record and other similar material in addition to the allegations of the complaint.

[2] Although Jeffrey Wilson was named as a defendant in the criminal case, he has not appeared in the prohibition proceedings in which the orders that required J.W. to undergo a pelvic examination were challenged.

[3] West Virginia Code § 61-8B-3(b) states that: Any person violating the provisions of this section is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than fifteen nor more than thirty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in a state correctional facility not less than fifteen nor more than thirty-five years.

[4] West Virginia Code § 61-8-12(c) states that: Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five years nor more than fifteen years, or fined not less than five hundred dollars nor more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than fifteen years.

facing a possible prison sentence from 65 years to 155 years, provided that the sentences would be set to run consecutively.

J.W. first disclosed sexual abuse allegations during the course of therapy for attention deficit disorder. J.W. reported to her counselor, Lawrence Richmond, that she had been sexually abused by Jason Wilson. During further therapy for the sexual abuse, J.W. identified Jeffrey Wilson as a second perpetrator.

On January 13, 2009, Jason Wilson sought to require J.W. to undergo a physical examination by a medical expert designated by the court. This type of examination is routinely performed on sexual assault victims at the behest of the State. *See* West Virginia Code § 61-8B-1(12).[5] At the time that the examination would have been performed, J.W. was 15 years of age. As support for his motion, Jason Wilson referred to various statements that J.W. had made to medical providers, psychologists and investigators. In these statements, she initially denied any physical penetration by Jason Wilson and intercourse with him. Subsequent to these statements, she was participating in play therapy with Phyllis Hasty, a registered play therapist. During the course of the play therapy, J.W. changed her story and claimed that Jason Wilson had sexual intercourse with her repeatedly. Jason Wilson, therefore, requested a physical examination by a medical doctor to determine whether there was any evidence of repeated traumatic intercourse.

---

[5] West Virginia Code § 61-8B-1(12) states that: "Forensic medical examination" means an examination provided to a possible victim of a violation of the provisions of this article by medical personnel qualified to gather evidence of the violation in a manner suitable for use in a court of law, to include: An examination for physical trauma; a determination of penetration or force; a patient interview; and the collection and evaluation of other evidence that is potentially relevant to the determination that a violation of the provisions of this article occurred and to the determination of the identity of the assailant.

In his motion, Jason Wilson asserted that the changes in J.W.'s statements were the result of improper interviewing. Although he requested a physical examination, he proposed that the results of the examination should be directed to Judge Knight for an *in camera* review. He additionally proposed that the results would only be released if the court determined that the results were probative on an issue to be tried. He noted that this type of examination is routinely performed in cases involving allegations of sexual assault. He finally pointed out that this type of physical evidence was not available from any other source.

By a written order entered on January 27, 2009, Judge Knight granted Jason Wilson's motion. (Exhibit 1). As a basis for his ruling, he noted the victim's age and that women of that age customarily have pelvic examinations. The order entered on January 27, 2009 incorrectly stated that the court was granting the State's motion for a physical examination. A subsequent order entered on February 3, 2009, indicated that defendant Jason Wilson requested the examination. (Exhibit 2).

Although the court granted the Motion for a Physical Examination, the examination was not performed because there was confusion as to the selection of the physician and the payment source. The order entered on February 3, 2009, directed Dr. Janette Huffman to perform the examination and that the State would be required to pay for it. (Exhibit 2). As noted in the complaint, this examination has never been performed.

To challenge the orders entered on January 27 and February 3, 2009, the prosecutor for the Circuit Court of Mercer County, West Virginia, filed a petition for a writ of prohibition styled: *State ex rel. J.W. v. Knight*, Case No. 84811, Supreme Court of

Appeals of West Virginia. As expressly noted in paragraph 19 of the complaint in this case, the petition for a writ of prohibition was filed "on behalf of the victim." In the prohibition proceedings, J.W. did not allege that the examination violated her federal constitutional rights. Rather, she argued that the defendant had failed to meet the standard established by *State v. Delaney*, 187 W. Va. 212, 417 S.E.2d 903 (1992), which requires the party requesting an additional examination to establish a compelling need when balanced against the potential physical or psychological harm to the victim. Syllabus Point Three of *Delaney* sets forth the factors to be considered when such requests are considered:

> In order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence that he has a compelling need or reason for the additional examinations. In making the determination, the judge should consider: (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use. *Id.*

In a written opinion, the West Virginia Supreme Court examined the relevant factors under the standard established by *Delaney*. Ultimately, the West Virginia Supreme Court found that "the trial court considered and applied the six factors we adopted in Delaney in ruling that the physical examination requested by Jason Wilson was warranted under the facts of the particular case. Findings no basis for determining that the trial court committed error in ordering the Petitioner to undergo a limited physical examination, the grounds for issuing a writ of prohibition have not been met."

*Knight*, 223 W. Va. at \_\_\_\_, 679 S.E.2d at 622.  Accordingly, the West Virginia Supreme Court denied the petition for a writ of prohibition on May 14, 2009.

To appeal this decision, J.W. filed a petition for a writ of certiorari in the United States Supreme Court in an action styled:  *J.W. v. Knight*, Case No. 09-191, United States Supreme Court.  In the petition for a writ of certiorari, J.W. was represented by private counsel and argued that the order requiring her to submit to a physical examination violated her federal constitutional rights.  The United States Supreme Court, however, declined to issue a petition for a writ of certiorari.

While J.W. sought appellate relief from the West Virginia Supreme Court and the United States Supreme Court, the criminal case remained pending in Mercer County Circuit Court.  On June 30, 2009, the State moved the court for a continuance to allow the victim to exhaust her federal remedies.[6]  (Exhibit 3).  The court granted the continuance and rescheduled the case for a status hearing on July 15, 2009.  On July 15, 2009, the trial court conducted a status hearing and the parties indicated that a plea agreement had been reached.  (Exhibit 4).  Accordingly, a plea hearing was scheduled for October 26, 2009.  On October 26, 2009, the State moved to continue the plea hearing.  The court granted the motion for continuance, and the criminal proceedings are currently scheduled for January 12, 2010.  (Exhibit 5).  Contrary to the plaintiff's allegation in paragraph six of the complaint, no stay of the proceedings has been entered in this case. The State has rather simply moved to continue the proceedings, and Jason Wilson has not objected.  The criminal case, therefore, remains on the court's docket and proceedings are scheduled for January 12, 2010.

---

[6] On August 12, 2009, J.W. filed her petition for a writ of certiorari with the United States Supreme Court.

In her complaint, the plaintiff seeks declaratory relief concerning Judge Knight's orders of January 27, 2009 and February 3, 2009. She seeks this relief in spite of the fact that extraordinary relief was properly sought but denied in the West Virginia Supreme Court and appellate review of that decision was sought and denied in the United States Supreme Court.

## II. STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of claims over which the Court lacks subject matter jurisdiction. When reviewing a motion based upon the absence of subject matter jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *A.T. Massey Coal Co., Inc. v. Meadows*, 476 F. Supp. 2d 578, 581 (S.D.W.Va. 2007). In such a review, however, the Court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *A.T. Massey Coal Co., Inc. v. Meadows*, 476 F. Supp. 2d at 581.

When reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the facts pleaded in the complaint must be assumed as true (but not the conclusions of law which the pleader draws from those facts). *Ridgeway Coal Co. v. FMC Corp.*, 616 F. Supp. 404 (S.D.W.Va. 1995); *Brock & Davis Co. v. Charleston Nat'l Bank*, 443 F. Supp. 1175 (S.D.W.Va. 1977). Further, "[m]ere allegations of legal conclusions are insufficient to state a claim under § 1983; when plaintiff's factual

allegations do not support the legal conclusions, the conclusions will not be accepted."
*Dortert v. Neely*, 498 F. Supp. 1144, 1147 (S.D.W.Va. 1980).

## III.  ARGUMENT OF LAW

**A.    The *Rooker-Feldman* Doctrine Operates as a Jurisdictional Bar to the Prosecution of this Complaint.**

As explained by the Fourth Circuit, the *Rooker-Feldman* doctrine originates from two United States Supreme Court cases:  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed.2d 206 (1983).  *Davani v. Va. Dep't. of Transportation*, 434 F.3d 712 (4th Cir. 2006).  Simply stated, "The Rooker-Feldman Doctrine generally bars district courts from sitting in direct review of state court decisions."  *Davani*, 434 F.3d at 717 (quoting *Barefoot v. City of Wilmington*, 306 F.3d 113 (4th Cir. 2002)).  In *Davani*, the Fourth Circuit discussed the parameters placed upon the *Rooker-Feldman* doctrine by the United States Supreme Court in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005).  The Fourth Circuit summarized the scope of the doctrine, stating that:  "*Exxon* teaches, however, that the *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself."  *Davani*, 434 F.3d at 713.  Quoting *Exxon*, the Fourth Circuit noted that the doctrine does not apply:  "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . .."  *Davani*, 434 F.3d at 718 (quoting *Exxon,* 125 S. Ct. at 1521-22, 1527).  As articulated by the Fourth Circuit, the pivotal

inquiry is whether the plaintiff is seeking redress for an injury caused by a state court decision. If so, the *Rooker-Feldman* doctrine applies.

In the instant case, the plaintiff, in her complaint, alleges that her constitutional rights have been violated because Judge Knight issued an order that required her to undergo a pelvic examination. (See Exhibits 1 and 2). In fact, she expressly states in her complaint that: "The actions of the defendant judge of the Circuit Court of Mercer County, West Virginia have caused and threaten to continue to cause the plaintiff to suffer injuries that chill the exercise of her federally protected rights." (Complaint, at ¶ 25.) She goes on to identify Judge Knight's actions as "issuing his order requiring Petitioner to undergo an unwanted pelvic examination." (Complaint, at ¶ 26.) It is abundantly clear, therefore, that the plaintiff is alleging an injury that is not independent of a state court judgment. Rather, it was caused by an order issued in a state court criminal case and an order issued by the West Virginia Supreme Court to deny her petition for a writ of prohibition. Unlike the plaintiff in *Davani*, the plaintiff in this action is not alleging some unconstitutional action that occurred apart from state court judicial proceedings. Her alleged injury, as she states herself, was caused by order issued by Judge Knight and the West Virginia Supreme Court of Appeals.

In paragraph 12 of the complaint, the plaintiff alleges that this Court has jurisdiction notwithstanding the *Rooker-Feldman* doctrine because she was not a party to the underlying criminal case. As recognized by the Fourth Circuit, the *Rooker-Feldman* doctrine apples to state court parties in subsequent federal district court proceedings. *Holliday Amusement Co. of Charleston, Inc. v. South Carolina*, 401 F.3d 534 (4th Cir. 2005). What the plaintiff's allegation concerning subject matter jurisdiction

fails to take into account is that the plaintiff was a party to a petition for a writ of prohibition in the West Virginia Supreme Court that was styled *State ex rel. J.W. v. The Honorable David W. Knight*, No. 84811. Once the West Virginia Supreme Court declined to issue a writ of prohibition to prevent the enforcement of Judge Knight's order, the plaintiff sought relief from the United States Supreme Court via a Petition for a Writ of Certiorari styled *J.W. v. The Honorable David W. Knight and Jason Wilson*. The plaintiff's attempt in her present complaint to avoid application of the *Rooker-Feldman* doctrine is an ineffective and artificial distinction. As a party, she sought relief from the entry of an order in a state court action and then sought review by filing a petition for a writ of certiorari in the United States Supreme Court. She has, as a party, sought appellate relief from the order in the criminal proceeding. She cannot now rely on her status as a nonparty in the criminal proceeding to avoid the application of the *Rooker-Feldman* doctrine.

Although the plaintiff's complaint is an attempt at artful drafting, such pleading does not allow a party to circumvent the *Rooker-Feldman* doctrine. *Allstate Ins. Co. v. West Virginia State Bar*, 233 F.3d 813 (4th Cir. 2000). In *Allstate*, the Fourth Circuit noted that in determining whether the *Rooker-Feldman* doctrine barred the district court from exercising subject matter jurisdiction, the court was required to examine the nature and effect of the proceedings, and not their form. 223 F.3d at 817. "The *Rooker-Feldman* doctrine may not be circumvented though artful pleading." *Id.* at 819.

**B.    The Doctrine of Claim Preclusion or *Res Judicata* Is an Affirmative Defense to the Plaintiff's Complaint.**

It is well settled that:  "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).  When considering this issue, "the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered."  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).

The West Virginia Supreme Court has established the elements that must be satisfied to bar a subsequent lawsuit on the basis of *res judicata* or claim preclusion. *Blake v. CAMC, Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (1997).  These elements are as follows:

> First, there must have been a final adjudication of the merits in the prior action by a court having jurisdiction of the proceedings.  Second, the two actions must involve either the same parties or persons in privity with those same parties.  Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.  Syl. Pt. 4, *Blake, supra.*

With regard to the first element, the West Virginia Supreme Court unquestionably had jurisdiction over J.W.'s challenge to the order that required her to undergo a medical examination.  The West Virginia Constitution places such authority in the West Virginia Supreme Court.  W. Va. Const. art. 8, § 3.  The issue was adjudicated on the merits because the West Virginia Supreme Court accepted the case, addressed the issues raised by the parties and rendered its decision.  *State ex rel. J.W. v. Knight*, 223

W. Va. 785, 679 S.E.2d 617 (2009).  The decision became final when the United States Supreme Court declined to grant the subsequent petition for a writ of certiorari.  It is beyond dispute, therefore, that the first element to establish *res judicata* -- adjudication on the merits by a court with jurisdiction -- has been satisfied.

With regard to the second element -- that the two actions must involve the same party or parties -- J.W. was a party to both the petition for a writ of prohibition and the petition for a writ of certiorari.  As noted by J.W. in her complaint, she is not a party in the underlying criminal proceeding, *State v. Jason Wilson*, Case No. 08-F-143, Circuit Court of Mercer County, West Virginia.  This argument is a red herring because it is without dispute that she was a party in the related civil case in which she sought relief from the entry of the order.  Given her status as a party in the prohibition proceeding, the second element of *res judicata*, that both cases involve the same parties, has been established.

With regard to the third element, it is undisputed that J.W. could have raised her federal constitutional claims in both the underlying criminal proceeding and in the petition for a writ of prohibition that was filed with the West Virginia Supreme Court.  It is well recognized that state courts are fully competent to adjudicate federal constitutional claims.  These state proceedings presented a more than adequate vehicle to address allegations of federal constitutional violations.  State courts have equal footing with the federal courts to safeguard federal constitutional rights.  *Steffel v. Thompson*, 415 U.S. 452, 460-62, 94 S. Ct. 1209 (1974).  (See Section C., infra.)  Although J.W. did not raise the federal constitutional claims until she filed the petition for a writ of certiorari with the United States Supreme Court, nothing prevented her from raising her constitutional

12

claims in both the Mercer County Circuit Court and the West Virginia Supreme Court. The third element to establish claim preclusion, therefore, has been satisfied. Since all of the elements have been satisfied, the doctrine of claim preclusion provides an appropriate basis to dismiss the plaintiff's complaint.

**C.     The Plaintiff's Claims Should be Dismissed Under the *Younger* Abstention Doctrine.**

In *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971), the United States Supreme Court articulated an abstention doctrine to prevent federal courts from unwarranted involvement in pending state court criminal prosecutions, notwithstanding allegations of federal constitutional violations. The purpose of the *Younger* abstention doctrine is to "permit state court's to try state cases free from interference by federal courts." 401 U.S. at 43. The doctrine is premised upon two fundamental principles. The first is a principle of equity: Even though federal courts have a duty to exercise the jurisdiction conferred upon them by Congress, equitable relief, such as the declaratory judgment sought by the plaintiff in this case, is discretionary. The federal statutes defining the scope of federal court jurisdiction:

> [D]o not call into question, the federal court's discretion in determining whether to grant certain types of relief - a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted. Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is " the normal thing to do." *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S. Ct. 2506 (1989) (citation omitted) (quoting *Younger*, 401 U.S. at 45).

The second, and more dominant, principle underlying *Younger* abstention is one of comity:

> [A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. *Younger*, 401 U.S. at 44.

The *Younger* doctrine thus embodies the vital principles of federalism and comity, constituting a "strong policy against federal court interference with any pending state judicial proceeding unless extraordinary circumstances so warrant." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994); see also *Employers Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1136 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094, 116 S. Ct. 816 (1996).

The *Younger* doctrine, while originally applied to limit federal court action regarding state criminal proceedings, has been applied to similarly require abstention from injunctive or declaratory relief arising from state court civil proceedings. *Trainor v. Hernandez*, 431 U.S. 434, 97 S. Ct. 1911 (1977); *Moore v. Sims*, 442 U.S. 415, 99 S. Ct. 2371 (1979); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S. Ct. 159 (1987); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392 (4th Cir. 1994); *Bluehippo Funding, LLC v. McGraw*, 2007 WL 6216559 (S.D.W.Va. 2007). As aptly observed by the Supreme Court:

> [T]o restrain a state proceeding that afforded an adequate vehicle for vindicating the federal plaintiff's constitutional rights "would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility equally with the federal courts" to safeguard constitutional rights and would "reflec(t) negatively upon the state court's ability" to do so. *Trainor v. Hernandez*, 431 U.S. at 443 (quoting *Steffel v. Thompson*, 415 U.S. 452, 460-61, 462, 94 S. Ct. 1209 (1974).

14

In the complaint now before this Court, the plaintiff seeks an order declaring that Judge Knight acted in violation of the federal constitution when he issued an order in the state criminal case. The plaintiff herein, not the criminal defendant in the state case, is the alleged victim of the sexual assaults giving rise to the criminal charges. In her complaint, the plaintiff attempts to negate the potential application of *Younger* abstention based upon her non-party status in the criminal case. In the context of the core principles of federalism and comity supporting *Younger* abstention, this is a distinction without difference.

Being a witness rather than a defendant in the criminal case - the effect is the same. Federal court interference with the pending state court proceedings will result if this Court does not abstain. The plaintiff wants this Court to wield federal authority to obstruct the ongoing state court proceedings. This is exactly what the *Younger* doctrine is designed to avoid. The plaintiff alleges that she "faces threatened incarceration for contempt" or will "be forbidden to testify" (the more plausible outcome) if she refuses to undergo the physical examination. (Complaint, at ¶ 25.) In any event, the factual accuracy of these allegations is not in issue at this point.[7] Application of the *Younger* doctrine extends to circumstances where a witness is subject to a possible contempt finding by a state court. *Juidice v. Vail*, 430 U.S. 327, 97 S. Ct. 1211 (1977). "Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's

_____

[7] As explained later in this memorandum in the section raising mootness, the court order requiring the physical examination will, in all likelihood, soon be a nullity, and the plaintiff will not be faced with the prospect of undergoing the examination.

contempt process is 'an offense to the State's interest . . ..'" *Id.* at 435-36 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S. Ct. 1200 (1975).

In *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S. Ct. 2515 (1982), the Supreme Court articulated the factors to be considered under the *Younger* doctrine. The Court held that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is:

> (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. *Id.* at 432, 102 S. Ct. 2515; *Martin Marietta Corp.*, 38 F.3d at 1396 (same); *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003) (same).

All of the elements requiring *Younger* abstention are present in this case. First, there is an ongoing state criminal proceeding, *State of West Virginia v. Jason Wilson*, Circuit Court of Mercer County, Criminal Action No. 08-F-143. (Complaint, at ¶ 9.) And this federal litigation is just beginning.

Second, it is beyond question that the collateral attack now mounted by the plaintiff in this Court implicates paramount state-court interests. *Younger v. Harris, supra* (state's interest in effective operation of its criminal justice system); *Juidice v. Vail, supra* (state's important interest in enforcing orders and judgments of their courts). See also *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. at 13-14 ("Both *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts.").

Third, the plaintiff had more than adequate opportunity to raise her federal constitutional claims, in state court. This opportunity was first presented at the trial court level in response to the defendant's Motion to Permit Physical Examination. Next, there was opportunity to raise the constitutional issues in the writ of prohibition proceedings before the West Virginia Supreme Court. In the complaint now before this Court, the plaintiff acknowledges that the petition challenging Judge Knight's order was filed on her behalf. (Complaint, at ¶ 19.) See also *State ex rel. J.W. v. Knight*, 223 W. Va. 785, 679 S.E.2d 617 (2009).[8] Finally, the petition for writ of certiorari filed in the United States Supreme Court presented another opportunity, and the constitutional claims were indeed presented on behalf of the plaintiff at that stage. (Complaint, at ¶ 22.) The petition was denied on October 20, 2009.

In addition to the well-established principles of federalism and comity, the *Younger* doctrine "also recognizes that state courts are fully competent to decide issues of federal constitutional law." *Martin Marietta Corp.*, 38 F.3d at 1396. The three criteria calling for *Younger* abstention are squarely presented by the case now before this Court.

The same day that *Younger v. Harris* was decided, the Supreme Court also decided the companion case, *Samuels v. Mackell*, 401 U.S. 66, 91 S. Ct. 764 (1971). Relying heavily on its reasoning in *Younger* regarding injunctive claims, the Court in *Samuels* easily concluded that the same federalism and comity principles limit the issuance of federal court declaratory judgments. The Court in *Samuels* reasoned:

---

[8] There is no clear indication that the federal constitutional issues were raised at either the trial court or state supreme court level. In any event, the pertinent consideration is the fact that such issues could have been raised in these state forums. *Moore v. Sims*, 442 U.S. 415, 425-26, 99 S. Ct. 2371 (1979).

> [I]n cases where the criminal proceeding was begun prior to the federal civil suit, the propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid. 401 U.S. at 72.

The Court accordingly held that:

> [T]he same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well. *Id.* at 73.

In the present action, the plaintiff wants this Court to issue a declaratory judgment that Judge Knight "has acted in violation of the federal constitution" and that "under the Supremacy Clause, a state court judge lacks authority to order a minor rape victim to submit to an unwanted pelvic examination." (Complaint, Demands for Judgment, at ¶¶ 1 and 2.) No injunctive relief is specifically sought, at least for now. This is undoubtedly due to the limitations imposed upon such relief by the 1996 amendments to 42 U.S.C. § 1983 providing that "in any action brought against a judicial officer for an act or omission taken is such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." But, as the Court in *Samuels* presciently observed, "even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Samuels*, 401 U.S. at 72.

Therefore, it appears that not only does the plaintiff want this Court to declare Judge Knight wrong for issuing the examination order in the pending state court case, she also seeks a pre-emptive federal declaration that *any* state court judge lacks the authority to issue a similar order in *any* other case regardless of the particular facts.

Under the circumstances of the novel and unprecedented constitutional claims asserted in the plaintiff's complaint, this Court should exercise its discretion and decline to entertain the request for declaratory relief.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to consideration of practicality and wise judicial administration." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S. Ct. 2137 (1995); see also *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494-95, 62 S. Ct. 1173 (1942) (district courts are "under no compulsion" to exercise jurisdiction over declaratory judgment actions).  The Fourth Circuit "has long recognized the discretion afforded to district courts in determining whether to render declaratory relief." *Aetna Cas. & Surety Co. v. Ind-Com Electric Co.*, 139 F.3d 419, 421-22 (4th Cir. 1998).

Based upon *Younger* and *Samuels*, and their progeny, deference rather than interference is the appropriate course in this case.  The plaintiff's complaint should be dismissed.

**D.    By the Time this Motion to Dismiss Is Fully Briefed by the Parties, the Claims in this Action Are Expected to Be Moot.**

The United States Constitution limits federal court  jurisdiction to the adjudication of actual cases with ongoing controversies.  U.S. Const. art. III, § 2.  *Defusin v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704 (1974); *Honig v. Doe*, 484 U.S. 305, 317,

108 S. Ct. 592 (1988).  "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944 (1969).

The controversy involved in the instant action arises from the state court order directing the plaintiff to undergo a pelvic examination.  The order was based upon a "compelling need" analysis in light of the allegations and evidentiary issues in the criminal case charges, against one of the plaintiff's brothers, Jason Wilson.  See *State ex rel. J.W. v. Knight*, 223 W. Va. 785, 679 S.E.2d 617 (2009); see also Complaint, at ¶ 1.  As reflected in the plaintiff's complaint, this examination has not taken place to date. The plaintiff filed her complaint instituting this federal action on November 24, 2009. Approximately one month earlier, the state court entered an order scheduling plea hearings for Jason Wilson, and his co-defendant brother Jeffrey Wilson, for January 12, 2010.  (See Exhibit 5).  Therefore, absent some intervening event, by the time this Motion to Dismiss is fully briefed by the parties, the order regarding the plaintiff will be a nullity and the claims in this case will be moot.

In *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S. Ct. 1202 (1980), the Supreme Court described mootness as "standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)."   445 U.S. at 397 (quoting Monaghan, Constitutional Adjudication:  The Who and When, 82 Yale L.J. 1363, 1384 (1973)).  In view of the pending and anticipated entry of pleas by the defendants in the state criminal case, whatever standing the plaintiff may have had when her complaint was filed will no longer exist come January 12, 2010.

There will be no criminal trial and consequently, no requirement that the plaintiff undergo the examination. To meet the standing requirement, the controversy at issue must exist at all stages of the case, not just at the time the complaint is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055 (1997); *A.T. Massey Coal Co., Inc. v. Meadows*, 476 F. Supp. 2d 578, 582 (S.D.W.Va. 2007). See also *Bowen v. Cheuvront*, 521 F.3d 860 (8th Cir. 2008) (dismissal of state criminal action mooted federal court action by rape-victim/witness seeking declaratory relief based upon purported violations of her constitutional rights); *Commonwealth v. Rape Crisis Services, Inc.* 416 Mass. 190, 617 N.E.2d 635 (1993) (rape defendant's guilty plea rendered moot rape crisis services center's appeal from contempt order for refusal to comply with trial court's order to produce records).

## IV. CONLCUSION

In the federal judiciary, only the Supreme Court possesses appellate jurisdiction over federal questions raised by state court decisions. What the plaintiff in this action seeks is nothing short of a remedy authorized only by the exercise of appellate jurisdiction. Moreover, the constitutional claims for which the plaintiff seeks federal declarations are issues that could have been raised (and ultimately were) in the state court proceedings. Even if jurisdiction existed in this instance, the plaintiff is barred from relitigation of these issues. Additionally, when such declaratory challenges seek, in essence, injunctive relief relating to pending state court proceedings, proper respect for the ability of state courts to resolve federal constitutional questions arising within the state court litigation requires that the federal court abstain.

Based upon the foregoing reasons, the defendant David W. Knight respectfully moves that this Court dismiss this action.

DAVID W. KNIGHT
Defendant

By Counsel

/s/ Teresa J. Lyons
John M. Hedges (WV Bar ID 1662)
Teresa J. Lyons (WV Bar ID 8047)
Counsel for Defendant Knight
BYRNE HEDGES & LYONS
141 Walnut Street
Morgantown, WV 26505
Telephone:  304-296-0123
Fax: 304-296-0713
E-mail:  john@byrnehedges.com
E-mail:  teresa@byrnehedges.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2009, I electronically filed the foregoing *Memorandum of Law in Support of Motion to Dismiss on Behalf of Defendant Judge Knight* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

> Michael F. Gibson
> Gibson Lefler & Associates
> 1345 Mercer Street
> Princeton, WV 24740

I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

> Wendy J. Murphy
> New England Law Boston
> 154 Stuart Street
> Boston, MA 02116

> /s/ Teresa J. Lyons
> John M. Hedges (WV Bar ID 1662)
> Teresa J. Lyons (WV Bar ID 8047)
> Counsel for Defendant Knight
> BYRNE HEDGES & LYONS
> 141 Walnut Street
> Morgantown, WV 26505
> Telephone:  304-296-0123
> Fax: 304-296-0713
> E-mail:  john@byrnehedges.com
> E-mail: teresa@byrnehedges.com