**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

J.W.,

                Plaintiff,

v.                                          CIVIL ACTION NO.  1:09-cv-01277

HON. DAVID W. KNIGHT, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

This action, in which the plaintiff seeks a declaration that the U.S. Constitution invalidates a state trial court's order forcing her to undergo a pelvic examination, has been remanded to this court by the U.S. Court of Appeals for the Fourth Circuit. In remanding the case, the Fourth Circuit vacated my determination that the action was moot. As explained below, the case has once again become moot, but for different reasons than were considered by the Fourth Circuit on appeal.

**I.    Background**

This case has a complicated procedural history, having made its way through West Virginia's state courts, the U.S. Supreme Court's certiorari process, motions practice in this court, and the early stages of appellate review by the Fourth Circuit. It all began with West Virginia's criminal prosecution of two brothers — Jason and Jeffrey Wilson — in the Circuit Court of Mercer County, West Virginia. The Wilson brothers were charged with sexually abusing their sister, J.W., between 2003 and 2005, when she was between nine and eleven years old. As part of his defense, Jason Wilson moved to force J.W., who was then fifteen years old, to undergo a physical examination by

medical professionals. On January 27, 2009, over the prosecution's objection, the state trial court granted the motion and ordered the examination.[1]

On March 6, 2009, the prosecution filed an application for a writ of prohibition, on behalf of J.W., with the Supreme Court of Appeals of West Virginia. The prosecution argued that, because of the victim's young age and in light of the long period of time between the alleged abuse and the planned examination, it was unlikely that any probative evidence would be produced by a physical examination. By a written opinion issued on May 19, 2009, the Supreme Court of Appeals denied the writ of prohibition. *See State v. Knight*, 679 S.E.2d 617, 622 (W. Va. 2009) (per curiam). In sum, the court ruled that the trial court had properly applied and considered the pertinent six-factor test under West Virginia law for assessing whether a party's request for a physical or mental examination should be granted. *Id.* at 620-22 (citing *State v. Delaney*, 417 S.E.2d 903, 904 (W. Va. 1992)).

J.W. then obtained counsel and filed a petition for a writ of certiorari in the U.S. Supreme Court on August 12, 2009. In her certiorari petition, J.W. maintained that, notwithstanding state law, her rights under the federal Constitution permitted her to remain free from an involuntary physical examination order. On October 20, 2009, the Supreme Court denied the petition without explanation. *See J.W. v. Knight*, 130 S. Ct. 461 (Oct. 20, 2009).

Thereafter, on May 14, 2010, J.W. filed the instant action in this court against the state court judge, the Hon. David W. Knight ("Judge Knight"), and Jason Wilson as the real party in interest. The Complaint contains four counts, predicated on the Fourth and Fourteenth Amendments to the

---

[1] Jeffrey Wilson never joined his brother's motion to require J.W. to submit to the physical examination. On February 3, 2009, the trial court reissued its order requiring the examination to clarify that it was Jason Wilson, and not the prosecution, that had requested the examination.

U.S. Constitution, and seeks a declaratory judgment that the state trial court "acted in violation of the federal constitution," and an "order declaring that under the Supremacy Clause, a state court judge lacks authority to order a minor rape victim to submit to an unwanted pelvic examination." (Compl. [Docket 1].)

Judge Knight promptly filed a motion to dismiss the suit on several grounds, including mootness, various abstention doctrines, and claim preclusion. After J.W. filed an emergency motion to stay the state-court proceedings, I conducted a hearing on January 11, 2010. At the hearing, the lawyers explained that both Jeffrey Wilson and Jason Wilson planned to enter guilty pleas in the underlying criminal prosecutions, thus obviating the need for the forced physical examination of J.W.[2] Accordingly, I denied the emergency motion as moot in an opinion issued on January 11, 2010 [Docket 16], and I granted Judge Knight's motion to dismiss the entire case as moot in an opinion filed on January 25, 2010 [Docket 18].

J.W. then appealed my ruling to the Fourth Circuit. *See J.W. v. Knight*, No. 10-1194 (4th Cir. 2010). On April 14, 2010, before J.W.'s opening appellate brief was filed, Judge Knight filed a motion in the Fourth Circuit to remand the case to this court because Jason Wilson's plea agreement had unraveled at his sentencing hearing and his case had instead been set for trial. In his motion, Judge Knight explained that, based on "information in the pre-sentence investigation report and other matters adduced at this hearing, [he] announced to the parties that he could not give final approval to the earlier tendered guilty pleas." (Mot. for Remand, at 4-5, No. 10-1194 [Docket 11] (4th Cir. Apr. 8, 2010).) In responding to Judge Knight's motion to remand, J.W. offered the same

---

[2] Indeed, Jason Wilson entered a guilty plea, which Judge Knight tentatively accepted, on January 12, 2010, and his sentencing was set for March 26, 2010.

basic version of events, noting that she faced "enforcement of the [physical examination] order now that the criminal trial is once again pending." (Pl.'s Resp to Mot. for Remand, at 2, No. 10-1194 [Docket 15] (4th Cir. Apr. 13, 2010).) The next day, J.W. filed her opening brief in the Fourth Circuit, describing the same procedural posture and suggesting that "[i]rrespective of what happens in the state proceeding, this Court should consider the merits for several reasons." (Br. of Appellant, at 14, No. 10-1194 [Docket 22] (4th Cir. Apr. 14, 2010).)

During the pendency of the appeal in the Fourth Circuit, however, the procedural posture of this case changed dramatically when J.W. willingly submitted to the physical examination in question.[3] Because the Fourth Circuit was not made aware of that material development, it was confronted with a limited record: my mootness ruling, predicated solely on Jason Wilson's guilty plea, followed by the subsequent rejection of that plea. Accordingly, on September 29, 2010, the Fourth Circuit issued an order vacating my earlier judgment and remanding for further proceedings in light of the withdrawal of Jason Wilson's guilty plea. *See* Order, No. 10-1194 (4th Cir. Sept. 29, 2010).

It was only after the Fourth Circuit's mandate issued and I ordered the parties to file supplemental memoranda concerning the remaining merits arguments that a more complete picture began to emerge. In a rendering of the facts and procedural history that is thoroughly baffling, counsel for J.W. has submitted a fifty-page brief on remand that only mentions in passing — as part

---

[3] Neither party bothered to inform the Fourth Circuit of the fact that J.W. had willingly submitted to the physical examination. Counsel has a continuing duty to keep the court informed of developments bearing on the outcome of the litigation. *See Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam) ("When a development . . . could have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court *without delay*.").

of a brief passage recounting a telephone call with the former prosecutor — the significant fact that J.W. has already undergone the physical examination on which this case turns. Not only that, but counsel also speculates that the examination "presumably" occurred while the appeal was pending before the Fourth Circuit. (Pl.'s Supp. Mem. at 10 [Docket 28].) This uncertainty is troubling, as it suggests that J.W.'s counsel may not be fully informed of the facts that are material to her client's case.

Judge Knight's supplemental brief on remand also does not fully articulate how the underlying criminal cases progressed in state court. He explains that, subsequent to the March 2010 hearing at which Jason Wilson's plea agreement was rejected, J.W. underwent the physical examination. The examination results were submitted to Judge Knight for *in camera* review, and counsel was then given access to the records. Fortunately, the documents submitted by Judge Knight to this court on remand clarify how J.W. came to submit to the examination, and, more importantly, demonstrate that J.W. *willingly* submitted to the examination. One of Judge Knight's orders summarizes the March 2010 hearing as follows:

> The Court inquired whether acceptance of the [Wilson brothers'] tendered please [*sic*] would entail registration of these Defendants as Sex Offenders pursuant to WV Code § 15-12-1. Defense counsel for Jason Wilson replied that such a requirement would result in withdrawal of the tendered plea. The Court then heard statements from the alleged victim [J.W.] and her parents in opposition to the plea agreement. The Court briefly adjourned the hearing to allow the alleged victim and family to meet with the Assistant Prosecutor in camera and discuss these matters.
>
> Upon resumption of the hearing, the State advised the Court that the alleged victim is opposed to the plea offered to the Defendants, and that the State wishes to proceed to trial. *The State further advised that the alleged victim, J.W., is willing to undergo the physical examination previously ORDERED by this Court* on the 27th day of January, 2009, on motion of Defendant Jason Wilson.

(Order of June 7, 2010, at 1-2 (emphasis added), *State v. Wilson*, No. 08-F-143 [Docket 29-1, Ex. 2].) J.W. does not in any way dispute this version of the events in state court.

Judge Knight has subsequently filed another supplemental memorandum [Docket 32], in which he explains that the underlying criminal cases against Jason Wilson and Jeffrey Wilson have been resolved. The criminal case against Jeffrey Wilson was dismissed by the prosecution on November 17, 2010, and, on January 7, 2011, Judge Knight accepted a guilty plea from Jason Wilson and sentenced him to a suspended prison sentence with five years probation.

In light of these developments, the parties have filed lengthy memoranda addressing whether this case is once again moot. They mostly focus their arguments on the developments in the two underlying criminal cases, but I am more concerned with a salient development in the underlying state-court proceedings — that, at some point while this matter was pending before the Fourth Circuit, J.W. willingly submitted to the physical examination with which this case is concerned. This opinion primarily takes up that issue.

## II.    Discussion

The business of federal courts is limited to deciding "Cases" and "Controversies." *In re Pruett*, 133 F.3d 275, (4th Cir. 1997) (citing U.S. Const. art. III, § 2). Because the doctrine of mootness stems from the Constitution's limitation of federal court jurisdiction, "it may not be ignored for convenience's sake." *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007). Thus, the issue of mootness, as with all questions of subject-matter jurisdiction, must be front and center in the court's attention, regardless of whether the parties raise the issue. *Id.* at 285.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In other

words, federal courts lack jurisdiction to "decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Moreover, the personal stake in the outcome that is required at the outset of litigation must continue throughout the lawsuit, even on appeal. *Mellen v. Bunting*, 327 F.3d 355, 363-64 (4th Cir. 2003). If the case is rendered moot by subsequent events, the court's power to decide the case is terminated. *Id.* These principles apply with equal force to a suit seeking declaratory relief. *See id.* at 365. Thus, a declaratory judgment can only issue when a dispute "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977). In short, the requisite legal interest necessary to support a live case or controversy must stem from something more concrete than the mere desire to obtain personal or emotional satisfaction by way of a ruling that the plaintiff was in some way wronged. *See id.*

This lawsuit concerns one issue — the impending forced physical examination of J.W. — and the plaintiff prays for only one form of relief — an order declaring that the state court lacked the power to force J.W. to submit to that examination. While this case was pending on appeal, however, J.W. voluntarily submitted to the contested physical examination. Judge Knight's order reveals that J.W. submitted to the examination as part of discussions involving the prosecution, J.W. and her family, and the court concerning the acceptability of Jason Wilson's plea agreement. Thus, because J.W. was willing to submit to the examination, and did in fact undergo it, she may not now seek a declaratory judgment as to the legality of the state court's order forcing her to submit to a compelled physical examination. This suit is not a class action,[4] nor does it concern a request by

---

[4] In arguing against mootness, J.W. maintains that the issues presented in this suit will recur in West Virginia's criminal justice system and will continue to affect similarly situated young
(continued...)

J.W. for damages to compensate her for a past injury. *Cf. Mellen*, 327 F.3d at 365 (holding that, although the plaintiffs' claims for declaratory and injunctive relief were moot, their damages claim presented a live controversy).[5]

Rather, J.W. seeks a declaration from this court that Judge Knight lacked the power under the Constitution to force her to submit to an impending physical examination. Even if I were to enter a judgment order to that effect, however, it would have no practical effect. That is the simplest illustration of why this case is moot, and why what the plaintiff seeks is nothing more than a hypothetical and advisory ruling on important principles of constitutional law. Thus, this case only presents "an abstract dispute about the law, unlikely to affect [J.W.] any more than if affects other [West Virginia] citizens." *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009). Moreover, it is entirely irrelevant whether the parties wish for the court to "render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong." *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009). Federal courts are only empowered to decide live controversies that impact the parties in a concrete way. *Id.* ("[O]ur consequent inability to render judgment on nice hypothetical or advisory questions, supplies a significant portion of what distinguishes the role of the federal judge from that of the advisor or academic in our constitutional order.").

---

[4](...continued)
women in the future. Whatever the merit of these arguments may be in a properly constituted class action, *see Sosna v. Iowa*, 419 U.S. 393, 402 (1975) (ruling that class members' live dispute with the defendant constituted a live controversy despite mootness of named plaintiff's claims), they have no bearing on this case, which simply concerns the rights of J.W. vs-à-vis the defendants.

[5] Of course, no part of my ruling today touches on any potential claim by J.W. for redress for *past* violations of her constitutional rights. Because nothing remotely akin to that sort of claim is presented in the Complaint, I express no view on the merits of such a claim.

The parties discuss at length two exceptions to the mootness doctrine. The first applies when a case involves a wrong that is capable of repetition, yet evading review; the second when a party voluntary ceases allegedly unlawful activity. *See, e.g.*, *Incumaa*, 507 F.3d at 288. In the absence of a class action, the "capable of repetition" exception is limited to those "exceptional situation[s], in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 289 (internal quotation marks and citations omitted). This exception fails here on the second element. It is inconceivable that J.W. could be subjected again to the action challenged by the Complaint because, not only have the underlying criminal prosecutions terminated, but the state court and counsel have already obtained the results of the examination to which she voluntarily submitted. Accordingly, J.W. cannot articulate why it would ever be necessary for a court in the future to order another forced examination arising out of this case.[6]

Next, the "voluntary cessation" exception to mootness stems from the concept that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). The Supreme Court explained in *City News* that the doctrine is inapposite where the party seeking judicial redress, not the adversary party, "saps the controversy of its vitality." *Id.* The same analysis applies here. Despite what may have transpired in the underlying state criminal

---

[6] J.W. argues that it is possible that she could suffer a future sexual assault and be subjected to a similar court order. That type of argument does not begin to approach a showing of a "reasonable expectation" that challenged conduct will recur. Moreover, the Fourth Circuit does not permit a court to premise its mootness analysis on the assumption that future illegal conduct will occur. *See Incumaa*, 507 F.3d at 289.

proceedings (and who may be to blame for those events), it was the party seeking judicial redress, J.W., who sapped the controversy of any vitality when she willingly submitted to the physical examination.

The Supreme Court's opinion in *City News* illustrates why this suit is moot by analyzing a subset of cases arising from the situation presented here: where some action taken *by the plaintiff*, but not the defendant, renders the case moot after it was filed. *See* 531 U.S. at 283. In two opinions issued within a year of each other, the Supreme Court addressed this issue in the context of businesses that were party to the cases before the Court having gone out of business while the litigation was pending. *See id.* at 282-83; *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). In *City of Erie*, the Court relied on a number of critical factors in concluding that the case was not moot. 529 U.S. at 287-88. Most importantly, the adult establishment that was the plaintiff in *City of Erie* had prevailed in the lower courts by successfully obtaining a judgment invalidating the city's ordinance. *Id.* Thus, if the case were moot and therefore incapable of being resolved by the Supreme Court, the defendant city "would have been saddled with an 'ongoing injury,' *i.e.*, the judgment striking its law." *Id.* at 288. And, if closing the business successfully mooted the appeal, a business could shut down in order to manipulate the Supreme Court's jurisdiction. *Id.* at 288.

In *City News*, by contrast, the Court concluded that a business's act of shutting down the business rendered the case moot. 531 U.S. at 284. Unlike in *City of Erie*, the business in *City News* "left the fray as a loser, not a winner." *Id.* Accordingly, the defendant city did not suffer from any adverse judgment, and there was no concern about manipulating the Court's jurisdiction because the plaintiff (also unlike in *City of Erie*) wanted the Supreme Court to decide the case. *Id.*

This case resembles the facts that led the Court in *City News* to conclude that the case was moot. J.W. did not prevail in state court here and has not done so in this court. There is no adverse judgment with which the defendants would be burdened and no concern about manipulating the court's jurisdiction. Quite simply, J.W., and not the defendants, ensured that no live controversy continued to exist between the parties when she voluntarily submitted to the physical examination in question. As a consequence, the declaratory judgement that J.W. requests could not possibly have any impact on the actual legal relationships between the litigants. Instead, the entry of such a judgment would be little more than an academic exercise in constitutional interpretation. Because that is not the function of federal courts of limited subject-matter jurisdiction, this action must be dismissed as moot.

### III. Conclusion

Pursuant to the foregoing, the claims in this case are moot. Accordingly, the court **DISMISSES** this action for lack of subject-matter jurisdiction.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 24, 2011

Joseph R. Goodwin, Chief Judge